## A96A1714. LATEX EQUIPMENT SALES & SERVICE, INC. v. APACHE MILLS, INC.
### (484 SE2d 274)

JOHNSON, Judge.

The issue presented in this case is whether judgment was properly entered on a jury verdict awarding the buyer of custom-built manufacturing equipment incidental damages for increased operating expenses incurred as a result of the seller's failure to deliver the machinery as agreed. We hold that, under the circumstances presented here, the judgment was properly entered.

Viewed in a light most favorable to the verdict, the evidence shows the following: Latex Equipment Sales & Service, Inc. designs, builds and installs standard and specialty machines used in textile manufacturing. Apache Mills, Inc., a textile manufacturer, had been cutting its materials manually and, in an effort to decrease labor costs and alleviate inventory storage problems associated with manual cutting, Apache Mills began investigating the use of automatic cutting equipment. Because standard machines could not effectively cut the wide range of materials processed by Apache Mills, it contacted Latex Equipment to see if it could recommend an appropriate machine. Before making any recommendations, Latex Equipment representatives toured Apache Mills' plant on several occasions, observed the operations from start to finish, and witnessed the problems caused by the manual cutting process. Apache Mills and Latex Equipment subsequently entered into a contract for Latex Equipment to design, build and install a cutting machine that would meet Apache Mills' special needs. As modified, the automatic cutting machine cost $73,291 and was to be completed on or about March 1, 1993. The agreement provided that Apache Mills would pay one-third of the price at the time the contract was executed, one-third at the time of shipment, and one-third within 30 days after shipment. Apache Mills made the first payment as agreed. However, the machine was not ready in March as promised. In October 1993, Latex Equipment contacted Apache Mills and informed it the machine was ready for shipping, but that Apache Mills would have to pay the full balance, rather than the one-third payment required by the contract. Latex Equipment claimed the new payment terms were justified

because Apache Mills defaulted on payment for other equipment it purchased earlier and so might default on the remaining payment on the cutting machine contract when it came due. Apache Mills refused to pay the entire balance and instead filed this suit, seeking injunctive relief, specific performance, money damages, attorney fees and litigation expenses. In the meantime, Apache Mills attempted to find another company to build the specialty machine but was unsuccessful. The jury returned a verdict awarding Apache Mills specific performance, incidental damages for increased operational expenses, interest on the down payment, attorney fees and litigation expenses. Latex Equipment appeals from the judgment entered on the verdict and the denial of its motions for new trial and for judgment n.o.v. We affirm.

1. Latex Equipment argues that the trial court erred in entering judgment on the jury's verdict awarding incidental damages for increased operating expenses because: Apache Mills did not present evidence of the machine's market value, consequential damages, or of expenses saved as a result of the breach, as required by OCGA § 11-2-713 (1); increased operating expenses do not qualify as incidental damages under OCGA § 11-2-715; increased operating expenses normally qualify as consequential rather than incidental damages, except that they do not amount to consequential damages here because the seller could not have foreseen the damages and the buyer could have mitigated its losses; and, the amount of damages awarded was unreasonable.

In considering these arguments, we bear in mind that the remedies provided by the Uniform Commercial Code "should be liberally administered so that the aggrieved party may be put in as good a position as if the other party had fully performed." (Citation and punctuation omitted.) *Emmons v. Burkett*, 256 Ga. 855, 858 (2) (353 SE2d 908) (1987); see OCGA § 11-1-106.

(a) Latex Equipment's contention that increased operating expenses do not qualify as incidental damages under OCGA § 11-2-715 is without merit. OCGA § 11-2-715 (1) provides, in relevant part, that incidental damages include any reasonable expenses incurred by the buyer as a result of the seller's breach. A jury was authorized to find from the evidence that the expenses were reasonable and were incurred as a result of Latex Equipment's failure to deliver and install the machine. Evidence at trial showed that as a result of Latex Equipment's failure to deliver the custom-designed cutting machine, Apache Mills incurred labor and inventory storage costs of $568,771 that it would not have incurred had the machine been delivered and installed two years earlier as promised. While we have found no Georgia cases addressing the issue, increased labor costs have been held to qualify as incidental damages under the UCC and

other states' versions thereof. See *Ohline Corp. v. Granite Mill*, 849 P2d 602, 605 (II) (Utah App. 1993); see generally *Jay V. Zimmerman Co. v. General Mills*, 327 FSupp. 1198, 1205 (11) (D. Ct. Missouri 1971). We note that awarding damages for operating costs which would not have been incurred absent a breach by the seller is consistent with the UCC's purpose of putting the buyer in as good a position as if the seller had fully performed. See OCGA § 11-1-106.

(b) Latex Equipment's argument that increased operating expenses could not have qualified as consequential damages in this case because the expenses incurred were unforeseeable and could have been prevented is without merit. See OCGA § 11-2-715 (2) (a). That Latex Equipment could not have foreseen the consequences of nondelivery is contradicted by evidence that its agents made several visits to the plant, observed the operations, were aware of the space and cost problems caused by manual processing, were aware that a standard machine would not suffice, and designed and built equipment to alleviate those specific problems.

Similarly, Latex Equipment's claim that Apache Mills could have mitigated its damages by buying a substitute machine or paying the full balance on the machine built by Latex Equipment is without merit. The transcript shows that Apache Mills did attempt to secure adequate replacement machinery, but that the promised machine was specifically designed to meet its particular needs; no comparable machine was found. Likewise, Apache Mills could not have mitigated its losses by complying with Latex Equipment's demand to pay the balance of the purchase price early in order to secure delivery of the machine. In making its demand, Latex Equipment was no longer promising to install the machine and provide the software necessary to make the machine operational. It is clear from the trial testimony that the machine could not be installed by Apache Mills and could not be operated unless Latex Equipment installed the software it created for this particular machine. In fact, testimony showed the machine and program were prototypes for which Latex Equipment was seeking a patent. Therefore, this argument fails as well.

(c) Latex Equipment also contends damages are not authorized because there was no evidence of the market price of the machine or expenses saved as a result of the breach. OCGA § 11-2-713 (1) provides that the measure of damages for nondelivery by the seller is the difference between the market price of the goods at the time the buyer learned of the breach and the contract price together with incidental and consequential damages, less expenses saved in consequence of the seller's breach. The machine at issue in this case was unique and specially designed to meet the needs of Apache Mills. Therefore, there was no market price for this custom machine. How-

ever, there was evidence of what a similar machine might cost. While none of the many textile equipment manufacturers contacted by Apache Mills could build a machine identical to the one built by Latex Equipment, one manufacturer claimed that it could build a somewhat comparable machine which, unlike the machine built by Latex Equipment, would not be able to cut all of the materials processed by Apache Mills. That manufacturer stated that it could do so for $225,000 but, unlike Latex Equipment, would not provide a money-back guarantee on the machine. Thus, there was evidence of the market price of a similar, though less desirable, machine. Likewise, there was evidence of expenses Apache Mills saved due to Latex Equipment's breach, namely that it did not have to pay wages for the workers who would have operated the machine. This enumeration is without merit.

(d) Latex Equipment argues the amount of the incidental damages award was unreasonable. As discussed in Division 1 (a), there was evidence that Apache Mills incurred $568,771 in incidental damages over a two-year period. Because the jury's award of $158,541 for incidental damages was within the range of damages established by the evidence, there was no error. See *Evans v. Willis*, 212 Ga. App. 335, 339 (5) (441 SE2d 770) (1994).

2. In a separate enumeration, Latex Equipment contends that the trial court erred in entering judgment against it for interest on the payment made by Apache Mills. This enumeration is not supported by argument or citation of authority; it simply states that it incorporates the arguments made in Division 1. Inasmuch as those arguments have already been considered and found meritless, this enumeration is without merit as well. In any event, we note that a buyer may recover incidental damages in the form of interest on the money paid by him from the date of the breach until the present. See *Fast v. Southern Offshore Yachts*, 587 FSupp. 1354, 1357 (1) (D. Conn. 1984) (decided based on Connecticut's version of UCC § 2-715 (1)).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 5, 1997 —
RECONSIDERATION DENIED MARCH 18, 1997 — 

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Thomas D. Richardson, C. King Askew, Mark M. J. Webb*, for appellant.

*Renzo S. Wiggins*, for appellee.